

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-16-1996

# Blanciak v. Allegheny Ludlum Corp.

Precedential or Non-Precedential:

Docket 95-3055

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Blanciak v. Allegheny Ludlum Corp." (1996). *1996 Decisions.* Paper 234.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/234

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Tech Init51

No. 95-3055


ROBERT J. BLANCIAK; RAYMOND BOWMAN; WILLIAM BURKETT;
MARLIN D. BYERS; RICHARD COOK; ROBERT E. DELLEDONNE;
JACK DELCIMMUTO; RICHARD T. FARAH; DONALD E. HOLMES;
JAMES MARKYBY; DONALD C. MILLER; HOWARD MUMAU;
DOMONIC POCETTI; EDWARD E. PRIMACK; ANTHONY RODNICKI;
WILLIAM D. ROWE; DON SHELLHAMMER; PAUL R. SIBIK;
JAMES WALKER; THEODORE W. WALKER; FRANCIS N. AMARANTO;
LEROY A. CALDERONE; RONALD E. CALHOUN; LOUIS ECARAVAGGIO;
JOSEPH W. CLARK; GEORGE L. FLEEGER; RONALD R. FULTON;
RICHARD L. GEORGE; JOHN M. GULYAS; JACK C. HESKETH;
ROBERT HUTCHERSON; ROBERT D. KNABB; BERNARD C. KUMPF;
WILLIAM JOHN MORDA; JAMES E. PATTY; LAURA G. POSKUS;
ARTHUR L. RAMER; F. EUGENE SMELTZER; ROBERT L. STEWART;
WESLEY E. SUMAN; DOUGLAS E. TALMADGE; JACK WILMOT, JR.,
individually and on behalf of all other persons similary situated
v.

ALLEGHENY LUDLUM CORPORATION; UNITED STEELWORKERS OF
AMERICA; and COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT
OF LABOR & INDUSTRY; HARRIS WOFFORD, Secretary of Labor
and Industry; MAURICE NATES; JOHN KRISIAK; STELLA RAVETTO;
R. C. THOMAS; CHARLES E. SWARTZ, and various JOHN DOE,
and or JANE DOE(S)

                              ROBERT J. BLANCIAK, RAYMOND BOWMAN,
                              JOSEPH W. CLARK; JACK DELCIMMUTO;
                              RICHARD T. FARAH, RICHARD GEORGE;
                              JOHN M. GULYAS; JACK C. HESKETH;
                              DONALD E. HOLMES; ROBERT D. KNABB;
                              JAMES MARKBY; DONALD C. MILLER;
                              JAMES E. PATTY; DOMINIC POCETTI;
                              EDWARD E. PRIMACK; ANTHONY RODNICKI;
                              WILLIAM ROWE; DON SHELLHAMMER;
                              F. EUGENE SMELTZER; ROBERT L. STEWART;
                              DOUGLAS E. TALMADGE and JAMES WALKER,

                                            Appellants




1

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


Argued:  October 27, 1995
Before:  STAPLETON, McKEE and GIBSON[1], <u>Circuit Judges</u>
(Filed February 16, 1995)

JAMES B. LIEBER (ARGUED)
Lieber & Hammer
5528 Walnut St.
Pittsburgh, PA 15232

<u>Counsel for Appellants</u>


ERNEST D. PRAETE
Attorney General

GLORIA A. TISCHUK (ARGUED)
Deputy Attorney General

Office of the Attorney General
4th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

<u>Counsel for Appellee</u>

OPINION OF THE COURT


McKEE, <u>Circuit Judge</u>

---

[1] The Honorable John R. Gibson, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

We are asked to determine whether the Eleventh Amendment to the United States Constitution bars a federal court from considering an age discrimination claim against the Commonwealth of Pennsylvania, Department of Labor and Industry ("Commonwealth"), that was acting in its capacity as an "employment agency" under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., when the alleged discrimination occurred. We must also determine whether the Eleventh Amendment bars an equitable award of "front pay" against the Commonwealth and its officials under 42 U.S.C. § 1983. Because we conclude that Congress has not abrogated the Eleventh Amendment's grant of constitutional immunity to states while acting as employment agencies under the ADEA, we will affirm the district court's finding that plaintiffs' ADEA claims are barred by the Eleventh Amendment. Furthermore, because we conclude that plaintiffs' equitable "front pay" claims under § 1983 seek monetary compensation to remedy a past wrong, we will affirm the district court's finding that the Eleventh Amendment bars those claims. Finally, we conclude that plaintiffs' remaining declaratory and injunctive claims under § 1983 have been rendered moot.

## I.

The facts relevant to this appeal are easily summarized. In January 1988, the United States Steel Corporation ("USX") placed its Vandergrift, Pennsylvania plant in an idled status and stopped manufacturing or shipping products from the facility.

3

Allegheny Ludlum Corporation ("Allegheny Ludlum") negotiated with USX and purchased the plant in June, 1988. In order to initially staff the facility, Allegheny Ludlum decided to hire fifty-five hourly employees from amongst the 125 who had previously worked at the plant. Accordingly, Allegheny Ludlum entered into an agreement with the United Steelworkers of America ("USWA") pursuant to which Allegheny Ludlum established a preferential hiring list for former Vandergrift employees who were USWA members (the "Agreement"). The Agreement gave Allegheny Ludlum the absolute right to select and assign thirty of the initial fifty-five hires. The remaining twenty-five were to be selected on the basis of continuous service, provided that they demonstrated the requisite skills for anticipated tasks.

The Job Services offices of the Commonwealth of Pennsylvania function as a no-fee employment service to bring employers and job seekers together. The offices administer a General Aptitude Test Battery ("GATB") for use in referring applicants to cooperating companies that are looking for workers. The GATB consists of twelve separately timed tests which purportedly measure a broad range of occupationally relevant cognitive, perceptual and psychomotor skills. In June 1988, Allegheny Ludlum requested the New Kensington and Kittanning Job Services offices to accept applications and administer GATB tests to those individuals on its preferential hiring list.

The instant litigation arose when a group of former USX employees over the age of forty filed a civil action for damages, declaratory and injunctive relief against Allegheny Ludlum, the

4

USWA and the Commonwealth of Pennsylvania, Department of Labor and Industry, its Secretary and various employees ("the Commonwealth"). The Complaint alleged that the staffing of the Vandergrift facility violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 et seq.; the Employee Retirement Income Security Act, 29 U.S.C. § 1000 et seq.; the Labor Management Relations Act of 1947, 29 U.S.C. § 1985; the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq.; and the Due Process Clause of the Fourteenth Amendment, actionable under 42 U.S.C. § 1983. Plaintiffs brought suit as a class action under 29 U.S.C. § 216(b).[2] The complaint alleged

---

[2] 1 The class action was brought ". . .on behalf of all other persons similarly situated who are at least 40 years old who have been, are being, or will be adversely affected by the Defendants' unlawful age discrimination in employment policies and practices. The 'Class' which Plaintiffs seek to represent, and of which Plaintiffs are themselves members, is composed and defined as follows:

> All persons, male and female, now named or hereafter executing and filing written consents to participate and join in this action, pursuant to 29 U.S.C. §216(b), who were, at any time from on or about 1987–1988 to date:
> (a) at least 40 years of age;
> (b) employed by USX at its. . .facility in Vandergrift,
> Pennsylvania; which plant was sold to Allegheny Ludlum;
> (c) subject to a collective bargaining agreement, and represented by the USWA;
> (d) involuntarily retired and/or not employed at Allegheny Ludlum for age motivated reasons;
> (e) subjected to such adverse employment actions as described infra in connection with the Allegheny Ludlum manning program for Vandergrift and nearby facilities. . ." Complaint, ¶ 8.

that the defendants' had discriminated against the employees in the class on the basis of age by administering the GATB.

Following discovery, plaintiffs entered a sealed settlement agreement and stipulated to the dismissal of all claims against Allegheny Ludlum and the USWA. The remaining Commonwealth defendants then moved for summary judgment based upon the sovereign immunity enjoyed by the Job Services offices of the Commonwealth under the Eleventh Amendment.[3] The district court granted the Commonwealth's motion based upon sovereign immunity, and ruled that plaintiffs' remaining injunctive and declaratory claims against the Commonwealth had been rendered moot by the settlement agreement with Allegheny Ludlum and the USWA. This appeal followed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Dismissal of an action based upon sovereign immunity is subject to plenary review by this Court. <u>Fitchik v. New Jersey Transit Rail Operations</u>, 873 F.2d 655, 658 (3d Cir. 1989), <u>cert</u>

---

Unlike a Rule 23 class action, a 29 U.S.C. § 216(b) class action does not bind those who fit within the class description unless they opt in. Title 29 U.S.C. § 626(b) permits the use of a 29 U.S.C. § 216(b) opt-in class action in ADEA cases.

[3] Although defendants brought their Eleventh Amendment objection by way of a motion for summary judgment under Fed.R.Civ.P. 56(b), the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction. <u>See</u> <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–07, 79 L.Ed.2d 67 (1984). Accordingly, the motion may properly be considered a motion to dismiss the complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

6

denied, 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989).  The district court's decision that this case is moot is also subject to plenary review.  Northeast Women's Center, Inc. v. McMonagle, 939 F.2d 57, 61 (3d Cir. 1991).

## III.

### A.

The Eleventh Amendment of the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  The Amendment has been interpreted to protect an unconsenting state from "suit in federal court by its own citizens as well as those of another state."  Pennhurst State School v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 907-08, 79 L.Ed.2d 67 (1984); Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

There are, however, certain well-established exceptions to the protection of the Eleventh Amendment.  Atascadero State Hospital v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985).  If a state waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action.  See e.g., Id. at 234, 105 S.Ct. at 3142; Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883).  Moreover, Congress may specifically abrogate the states'

7

Eleventh Amendment immunity. See e.g., <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (finding abrogation in legislation passed pursuant to § 5 of the Fourteenth Amendment); and <u>Pennsylvania v. Union Gas Co.</u>, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d. 1 (1989) (finding abrogation in legislation passed pursuant to the Congress' Article I, § 8 plenary power over commerce). Here, appellants contend that Congress specifically abrogated the sovereign immunity of states and all state agencies in amending the ADEA, and that the Eleventh Amendment therefore presents no bar to their ADEA claim against the Commonwealth. However, the plain language of the ADEA defeats this argument.

Two conditions must be met before we can decide that Congress abrogated the states' Eleventh Amendment immunity in enacting or amending the ADEA. First, the congressional legislation in question must articulate an unequivocal congressional intention to abrogate the sovereign immunity of the states. <u>Dellmuth v. Muth</u>, 491 U.S. 223, 230, 109 S.Ct. 2397, 2401, 105 L.Ed.2d 181 (1989); <u>Atascadero State Hospital v. Scanlon</u>, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146-47, 87 L.Ed.2d 171 (1985). On more than one occasion, the Supreme Court has said that Congress "must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself." <u>Atascadero</u>, 473 U.S. at 242, 105 S.Ct. at 3148; <u>Dellmuth</u>, 491 U.S. at 230, 109 S.Ct. at 2401 ("[E]vidence of congressional intent must be both unequivocal and textual."). "In traditionally sensitive areas, such as legislation affecting the

8

federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." United States v. Bass, 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971). Second, the Constitution must give Congress the power to abrogate the states' Eleventh Amendment immunity. The party asserting Eleventh Amendment immunity bears the burden of proving its applicability. Christy v. Pennsylvania Turnpike Comm., 54 F.3d 1140, 1144 (3d Cir. 1994). The Supreme Court has yet to determine if Congress possesses the power to abrogate the states' historic Eleventh Amendment immunity when neither legislating to enforce the prohibitions of the Fourteenth Amendment nor acting to regulate interstate commercial activity under the Commerce Clause.

Here, we have no trouble resolving the second part of this inquiry as the Supreme Court has held the ADEA to be a valid exercise of Congress' plenary power to regulate interstate commerce under the Commerce Clause. See EEOC v. Wyoming, 460 U.S. 226, 243, 103 S.Ct. 1054, 1064, 75 L.Ed.2d 18 (1983). Moreover, virtually every court which has addressed the question has concluded that the ADEA was validly enacted pursuant to Congress' power to enforce section five of the Fourteenth Amendment. See e.g., Hurd v. Pittsburg State University, 821 F.Supp. 1410, 1413 (D.Kan. 1993), aff'd, 29 F.3d 564, 565 (10th Cir.), cert denied __ U.S. __, 115 S.Ct. 321, 130 L.Ed.2d 282 (1994); Bell v. Purdue University, 975 F.2d 422, 425 n.5 (7th Cir. 1992); Davidson v. Bd. of Gov. of State Coll. & Univ., 920

F.2d 441, 443 (7th Cir. 1990); <u>Ramirez v. Puerto Rico Fire Service</u>, 715 F.2d 694, 700 (1st Cir. 1983) <u>Arritt v. Grisell</u>, 567 F.2d 1267, 1271 (4th Cir. 1977); ; <u>Swanson v. Dept. of Health</u>, 773 F.Supp. 255, 258 (D.Colo. 1991); <u>but</u> <u>see</u>, <u>Black v. Goodman</u>, 736 F.Supp. 1042, 1045 (D.Mont. 1990).

The ADEA, as amended in 1974, makes it unlawful for an "employer" to fail or refuse to hire or to discharge or otherwise discriminate against any individual because of such individual's age. 29 U.S.C. §§ 623(a)(1), 626(b)-(c). The Act defines the term "employer" to include "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State," 29 U.S.C. § 630(b)(2), and explicitly provides that an "employer" who violates the Act is liable for legal and equitable relief.

> Unless Congress had said in so many words that it was
> abrogating the states' sovereign immunity in age
> discrimination cases--and that degree of explicitness
> is not required, (citations omitted) --it could not
> have made its desire to override the states'
> sovereign immunity clearer.

<u>Davidson</u>, 920 F.2d at 443.

The statute simply leaves no room to dispute whether states and state agencies are included among the class of potential defendants when sued under the ADEA for their actions as "employers."

However, that does not end our inquiry. Plaintiffs agree that any ADEA liability in the instant action arises because the Commonwealth was acting as an "employment agency," and not in the

10

capacity of an "employer" in administering the GATB. The ADEA defines an "employment agency" as "any person regularly undertaking with or without compensation to procure employees for an employer and includes an agent of such person; but shall not include an agency of the United States." 29 U.S.C. § 630(c). Accordingly, we must decide whether the Eleventh Amendment bars ADEA claims brought against a State *while acting in its capacity as an employment agency*. This question is one of first impression for this Court, and our research reveals only one other court to have directly addressed the issue.[4]

In 1974, Congress explicitly expanded the ADEA definition of "employer" to include "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State." 29 U.S.C. § 630(b)(2). However, at the same time, Congress failed to similarly expand the statutory definition of "employment agency." Congress merely amended that language by deleting the italicized portion below:

> (c) the term "employment agency" means any person undertaking with or without compensation to procure employees for an employer and includes an agent of such person; but shall not include an agency of the United States *or an agency of a State or political subdivision of a State, except that such term shall include the United States Employment Service and the system of State and local employment services receiving Federal assistance.*

---

[4] Here, the district court relied on its own precedent in <u>Radeschi v. Commonwealth of Pennsylvania</u>, 846 F.Supp. 416 (W.D.Pa. 1993). In <u>Radeschi</u>, the district court dismissed the ADEA claim of a job applicant who sued the Commonwealth of Pennsylvania after the state employment agency refused to refer him as a result of an aptitude test. The court held that the Eleventh Amendment bar remained in place for the Commonwealth while acting in its capacity as an employment agency. 846 F.Supp. at 421.

Act of April 8, 1974, Pub.L. 93-259, 1974 U.S.C.A.A.N. (93 Stat.) 78 (codified at 29 U.S.C. § 630). In effect, Congress simply deleted the language explicitly excluding state employment agencies from the reach of the ADEA. At the same time, however, Congress failed to specifically include state actors within the definition of "employment agency." Moreover, Congress failed to expressly incorporate state actors into the definition of "person" used in 29 U.S.C. § 630. Section 630(a) of the ADEA defines "person" as "one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized group of persons." Accordingly, the intent of Congress to abrogate the Eleventh Amendment immunity of states while acting as employment agencies is not clear. Congress certainly could have amended the definition of "employment agency" in the same manner that it so clearly amended "employer" in 29 U.S.C. § 630. We can only assume that Congress's failure to do so was significant.

Appellants contend that it is hardly conceivable that Congress, having fully extended ADEA liability to the states, would carve out a special immunity for states *while engaging in employment services*. Such a result, they suggest, would not only be illogical but unjustifiable on policy grounds. Furthermore, appellants point out that state employment agencies are held liable for discriminatory practices under the closely analogous statutory framework of Title VII, and they therefore urge us to

12

be guided by those cases that have decided this issue under Title VII.[5]

These arguments, though well-reasoned, miss the point. Our inquiry here is severely limited, and we must find congressional intent to abrogate sovereign immunity solely from "the unmistakable language of the statute itself." Atascadero 473 U.S. at 242, 105 S.Ct. at 3148. Accordingly, our analysis can not expand to encompass the analogy and policy considerations that plaintiffs now urge upon us. Though one may question the policy justifications for furnishing a special statutory immunity to states while engaged in employment services, the ADEA's treatment of the question is, at best, ambiguous. The limitations of Atascadero, and our traditional constraints against acting as a "super legislature" preclude us from reading language into this statute that Congress did not enact, and may well not have intended. See e.g., City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) ("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."); see also, Griswold v. Connecticut, 381 U.S.

---

[5] Title VII defines an "employment agency" as "any person regularly undertaking with or without compensation to procure employment for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." 42 U.S.C. § 2000e(c). A "person" is specifically defined to include "governments, governmental agencies. . ." 42 U.S.C. § 2000e(a). Thus, Congress has made it "unmistakably clear" that no Eleventh Amendment immunity exists for governmental employment agencies and services, state or federal, under Title VII.

479, 482, 85 S.Ct. 1678, 1680, 14 L.Ed.2d 510 (1964).

The statutory language of the ADEA simply does not evince an unmistakably clear intention to abrogate the states' Eleventh Amendment immunity from suit while acting in their capacity as employment agencies under that Act. Accordingly, we will affirm the district court's holding that plaintiffs' ADEA claims against the Commonwealth are barred by the Eleventh Amendment.

### B.

Plaintiffs also brought suit against the Commonwealth and various of its officials, acting within the scope their official capacities, for equal protection and due process violations under 42 U.S.C. § 1983. Plaintiffs alleged that the Commonwealth's administration of the "arbitrary and discriminatory" GATB posed an unconstitutional bar to employment with Allegheny Ludlum. Since the Commonwealth was not the employer here, it was obviously not in a position to reinstate the steelworkers. Accordingly, plaintiffs prayed for an equitable award of "front pay" as their remedy. The district court correctly held that plaintiffs' § 1983 "front pay" claims were barred by the Eleventh Amendment.

The Supreme Court has held that States are not "persons" within the meaning of § 1983 and, therefore, cannot be among those held liable for violations of the civil rights statute. Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but

14

it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."). Since Congress expressed no intention of disturbing the states' sovereign immunity in enacting § 1983, these suits, when brought against a state, are barred by the Eleventh Amendment. Id. at 58, 109 S.Ct. at 2310; Quern v. Jordan, 440 U.S. 332, 339-346, 99 S.Ct. 1139, 1144-1148, 59 L.Ed.2d 358 (1979). Accordingly, plaintiffs' claims for "front pay" must fail.

The analysis under the Eleventh Amendment in a § 1983 suit is less straightforward, however, when a state official (as opposed to the state itself) is named as defendant. Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986). In Will, the Supreme Court held that state officials acting in their official capacities are not "persons" under §1983. 491 U.S. at 71, 109 S.Ct. at 2312 ("A suit against a state official in his or her official capacity. . .is no different from a suit against the State itself."). Nevertheless, in certain circumstances, those officials may still be subject to federal suit, despite the Eleventh Amendment, under the narrow exception of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In Ex parte Young, the Supreme Court held that the Eleventh Amendment did not bar a federal court action to enjoin the Attorney General of Minnesota from enforcing a state statute claimed to violate the Fourteenth Amendment. 209 U.S. at 166-168; 28 S.Ct. at 456-457. The only relief awarded in Ex parte

15

<u>Young</u> was *prospective, injunctive relief*; requiring the Attorney General to conform his future, official conduct to the dictates of the Fourteenth Amendment. The Supreme Court reasoned that the actions of a state official taken pursuant to an unconstitutional state enactment could not be regarded as "official or representative" since the underlying state authorization for these actions would be void under the Constitution. <u>Ex parte Young</u>, 209 U.S. at 160, 28 S.Ct. at 454 ("If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution. . .he is in that case stripped of his official or representative character. . ."). Accordingly, the state official, although formally acting in an official or representative capacity, may nevertheless be sued in federal court.

The applicability of <u>Ex parte Young</u> has been tailored by the Supreme Court "to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." <u>Papasan</u>, 478 U.S. at 277, 106 S.Ct. at 2940 (<u>citing</u> <u>Pennhurst</u>, 465 U.S. at 105, 104 S.Ct. at 910).

> <u>Young</u> has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation.

16

_Papasan_, 478 U.S. at 277-278, 106 S.Ct. at 2940.  Accordingly, relief that essentially serves to compensate a party injured in the past by the action of a state official, even though styled as something else, is barred by the Eleventh Amendment.  See e.g., _Green v. Mansour_, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985); _Edelman v. Jordan_, 415 U.S. 651, 664-668, 94 S.Ct. 1347, 1356-1358, 39 L.Ed.2d 662 (1974).  On the other hand, "relief that serves directly to bring an end to a present, continuing violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury."  _Papasan_, 478 U.S. at 278, 106 S.Ct. at 2940 (_citing_ _Milliken v. Bradley_, 433 U.S. 267, 289-290, 97 S.Ct. 2749, 2761-2762, 53 L.Ed.2d 745 (1977); _Edelman_, 415 U.S. at 667-668, 94 S.Ct. at 1357-1358).

In the instant case, appellants characterize their § 1983 actions as equitable claims for prospective relief only, i.e., "front pay" damages, but that label is of no importance.  This Court must look to the substance rather than the form of the relief requested to determine whether appellants' claims are barred by the Eleventh Amendment.  _Papasan_, 478 U.S. at 279, 106 S.Ct. at 2940-2941.

In their complaint, plaintiffs' § 1983 "front pay" claims targeted the official acts of Job Service employees in administering the GATB and assisting in the hiring of employees for the Allegheny Ludlum facility.  Complaint, ¶ 110-120, 143-144.  In pressing those claims before this Court, counsel for appellants argues that "the GATB posed an unconstitutional bar to

17

[the steelworkers'] employment. . .[and] harmed them in that they did not receive jobs with Allegheny Ludlum." Appellant's Brief at 39.

We find appellants' § 1983 "front pay" claims to be neither prospective nor equitable as they have been presented to this court. Appellants' specific allegations target past conduct, and the "front pay" remedy is not intended to halt a present, continuing violation of federal law. Rather than vindicating federal rights by holding state officials accountable to the Constitution, we believe that "front pay" relief, under the circumstances of this case, would provide nothing more than compensatory damages which would have to be paid from the Commonwealth's coffers. Plaintiffs' request for "front pay" does not, therefore, fall within the boundaries of permissible relief defined by Ex Parte Young and we therefore affirm the district court's holding that these claims are barred by the Eleventh Amendment.

C.

Finally, plaintiffs advanced claims for declaratory and injunctive relief against the Commonwealth and various of its officials under 42 U.S.C. § 1983. Plaintiffs requested the district court "to both declare the administration of the GATB test unlawful and enjoin the Commonwealth from any further administration of it." Appellant's Brief at 42. After reviewing plaintiffs' sealed settlement agreement with Allegheny Ludlum and the USWA, the district court concluded that plaintiffs had

18

already attained all the relief sought in this litigation, and it dismissed these claims as moot. Appellants argue that they have a sufficiently cognizable interest in the continuing adverse impact of the GATB to satisfy the requirements for standing on their declaratory and injunctive claims. They suggest:

> Appellants' GATB scores will follow them all of the days of their lives, and throughout the course of their working lives, unless Commonwealth's use of the GATB test is enjoined.
>
> Appellants may not be able to work in the future because their GATB results may preclude them getting a job. The test results become part of their records. . .and cannot be changed.

Appellants' Brief at 43-44. Appellants claim that poor GATB results are "much like a scarlet letter." Id. at 44. However, Hester Prynne's fall from grace does not suggest that the district court erred.

Generally speaking, a case becomes moot when the issues are no longer live or the parties lack a cognizable interest in the outcome. Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). Article III's "case or controversy" requirement prevents federal courts from deciding cases that are moot. See e.g., Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3, 84 S.Ct. 391, 394 n.3, 11 L.Ed.2d 347 (1964). If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot. See e.g., Rosetti v. Shalala, 12 F.3d 1216, 1224 (3d Cir. 1993); Brock v. International Union, UAW, 889 F.2d

19

685 (6th Cir. 1989); United States Parole Commission v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (The interest required of a litigant to maintain a claim under the mootness doctrine is the same as that required to attain standing).

The ultimate question before us is whether appellants' declaratory and injunctive claims pertaining to the Commonwealth's administration of the GATB have been rendered too speculative, hypothetical or abstract to warrant further judicial review. "Past exposure to illegal conduct does not in itself show a present case or controversy. . .if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 675-76, 38 L.Ed.2d 674 (1974). Accordingly, in the aftermath of the steelworkers' settlement agreement with Allegheny Ludlum and the USWA, appellants must demonstrate some injury, or threat thereof, "of sufficient immediacy and ripeness to warrant judicial intervention." See Warth v. Seldin, 422 U.S. 490, 516, 95 S.Ct. 2197, 2214, 45 L.Ed.2d 343 (1975). This determination "depends in large part on a uniquely individualized process. . .centered on the facts and parties of each case." See 13A WRIGHT, MILLER & COOPER: FEDERAL PRACTICE AND PROCEDURE, § 3533.5 (1984).

We believe adjudication of appellants' remaining declaratory and injunctive claims is not only barred by Article III but foreclosed by prudential concerns as well. In the district court, appellants adduced evidence that GATB results become part of an employee's permanent record and that more than one thousand

20

Pennsylvania employers, including numerous steel companies, utilize the exam as an important job screening device. Moreover, evidence indicated that one appellant, Richard Farah, may not have been hired in the past by a steel company which utilizes the GATB to screen applicants.[6] Accordingly, appellants argue that continued use of the exam would engender a cognizable danger of future harm in the Pennsylvania job market.

Under the totality of circumstances here, we cannot agree. In Warth, the Supreme Court addressed the intervention of an association of construction firms in a suit in which the plaintiffs alleged that a town's zoning ordinance violated the Fourteenth Amendment. The association claimed that the ordinance deprived some of its members of business opportunities and revenues. The Court reasoned as follows in finding that the association lacked standing:

> The complaint refers to no specific project of any of [the association's] members that is currently precluded. . .There is no averment that any member has applied to respondents for a building permit or a variance. . .Indeed, there is no indication that respondents have delayed or thwarted any project currently proposed by [the association's] members . . .

Warth, 422 U.S. at 516, 95 S.Ct. at 2214.

In the instant case, none of the appellants claim a present injury from the Commonwealth's administration of the GATB.[7] No

---

[6]    Mr. Farah was subsequently hired by Allegheny Ludlum pursuant to the Settlement Agreement.

[7]    Although appellants do not specifically advance such an argument, it may be suggested that appellants suffer a present injury from the Commonwealth's continued use of the GATB in the form of diminished career *expectations*. We need decide whether

appellant claims to be seeking a job in Pennsylvania that would require the GATB. Moreover, it appears that Richard Cook, the only appellant to have an active registration with the appellee Commonwealth Job Service was referred to a job opening. In short, there is no hint in the record of any present or imminent future harm from the Commonwealth's alleged conduct. Any relevant injury that may befall any of the appellants is contingent upon a host of occurrences, each of which is just too speculative to fulfill the requirement of a present "case of controversy." The record does not indicate that any of the appellants are currently unemployed or, for any other reason, are currently seeking employment. Moreover, to be affected by the practice sought to be enjoined, an appellant seeking employment would have to seek it in Pennsylvania, register with the Commonwealth Job Service and apply for a position that requires the GATB. The Supreme Court has repeatedly recognized that claims predicated upon such speculative contingencies afford no basis for finding the existence of a continuing controversy as required by Article III. See e.g., Rizzo v. Goode, 423 U.S. 362, 371-73, 96 S.Ct. 598, 604-05, 46 L.Ed.2d 561 (1976); DeFunis v. Odegaard, 416 U.S. 312, 320 n.5, 94 S.Ct. 1704, 1707 n.5, 40 L.Ed.2d 164 (1974). Accordingly, we cannot conclude that appellants have demonstrated any injury, or threat thereof, "of

---

such an abstract expectation can give rise to a "case or controversy." See e.g., Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216-227, 94 S.Ct. 2925, 2930-2935, 41 L.Ed.2d 706 (1974) (Discussing the distinction between injury in the abstract, which does not confer standing, and concrete injury).

sufficient immediacy and ripeness" to satisfy the jurisdictional requirements of the federal courts. Warth 422 U.S. at 516, 95 S.Ct. at 2214. Moreover, even if appellants' remaining claims were not constitutionally moot, this Court would have ample reason to exercise its discretionary power to withhold the requested relief on prudential grounds. "The discretionary power to withhold injunctive and declaratory relief for prudential reasons, even in a case not constitutionally moot, is well established." S-1 v. Spangler, 832 F.2d 294, 297 (4th Cir. 1987); see also, United States v. W.T. Grant, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); A.L. Mechling Barge Lines, Inc. v. U.S., 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961). For many of the same reasons articulated by the Fourth Circuit Court of Appeals in Spangler, we believe prudence would require this Court to withhold any declaratory or injunctive relief under the present circumstances. In Spangler, the parents of two handicapped children brought a § 1983 action for declaratory and injunctive relief against the North Carolina State Board of Education for the refusal of its hearing officers to award tuition reimbursements as a remedy for violations of the Education of Handicapped Act, 20 U.S.C. § 1400 et seq. ("EHA"). The district court granted the parents' motion for summary judgment. While the appeal was pending, the parents reached a settlement agreement with the Asheboro City Board of Education. Under the terms of the agreement, the parents dismissed all their claims against the City Board in return for the City Board's agreement to pay their accrued tuition expenses. The State Board

23

was not a party to the agreement.  Nevertheless, in light of the change in circumstances, the court concluded that the parents' remaining declaratory and injunctive claims against the State Board should be treated as moot for prudential reasons.  Spangler, 832 F.2d at 297.

The court reached this result for three reasons.  First, since the parents had already received tuition reimbursement for all past tuition expenses incurred and were not currently paying tuition that was subject to reimbursement because of the placement of their children in an acceptable public school program, they had no imminent need for a hearing on entitlement to tuition reimbursement.  Id. at 297.  Second, the presence of complicated and sensitive Eleventh Amendment issues persuaded the court that it "would be imprudent to address the merits of this appeal now that the basic claim. . .ha[d] been settled."  Id. at 298.  Finally, the court believed that the issues raised did not require immediate resolution as "capable of repetition yet likely to evade review."  Id. at 298.  Accordingly, the court exercised its discretionary power to treat the appeal as moot on prudential grounds.

In the instant appeal, we are presented with similar Eleventh Amendment concerns in the context of a case in which reinstatement and/or compensatory damages -- the ultimate object of the steelworkers' underlying action -- has already been supplied by virtue of a settlement agreement.  Consequently, we believe that resolution of this sensitive constitutional question

would be better left to a court presented with a more concrete and immediate dispute.

Accordingly, we will affirm the district court's conclusion that plaintiffs' declaratory and injunctive relief claims against the Commonwealth and various of its officials under § 1983 are moot.

IV.

For the foregoing reasons, we affirm the judgment of the district court.