EDMONDSON, Circuit Judge:[1]
Three cases presenting the same or similar issues of Eleventh Amendment immunity were consolidated and are addressed in this appeal. In all three cases, the States,' or their agencies, submitted motions to dismiss based on Eleventh Amendment immunity. The issues in this appeal are whether Con *1429 gress abrogated States’ Eleventh Amendment immunity for suits under the Age Discrimination in Employment Act (“ADEA”) and under the Americans with Disabilities Act (“ADA”).[2]
Two district courts, the Northern District of Florida, Tallahassee Division, in State of Florida, Board of Regents v. Kimel (“Kimel ”) and the Northern District of Florida, Panama City Division, in Florida Department of Corrections v. Dickson (“Dickson ”), held that Congress effectively abrogated States’ sovereign immunity with its enactment of the ADEA (and for Dickson the ADA) and denied the motions to dismiss. But, the Northern District of Alabama in MacPherson, Narz v. University of Montevallo (“MacPherson ”) granted the State’s motion to dismiss on Eleventh Amendment grounds. We agree with the Northern District of Alabama that suits by private parties against States in federal court for ADEA violations are prohibited by the Eleventh Amendment.'
The cases were appealed for us to decide whether Congress abrogated sovereign immunity when it enacted the relevant statutes.[3] Because this appeal presents only questions of law, not dependent upon factual determinations, the facts of each Plaintiff’s claim will not be discussed.

Discussion

A district court’s order denying or granting a motion to dismiss a complaint against a State based on the Eleventh Amendment’s grant of sovereign immunity is reviewed by this court de novo. See Seminole Tribe of Florida v. Florida, 11 F.3d 1016, 1021 (11th Cir.1994), aff’d, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).
The Eleventh Amendment states:
The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
U.S. Const, amend. XI. This provision not only prohibits suits against States in federal court by citizens of other States, but also prohibits suits brought against a State in federal court by its own citizens. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).[4]
In Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court recently considered the issue of when Congress can properly abrogate States’ Eleventh Amendment immunity. The Court’s decision in Seminole overruled Pennsylvania v. Union Gas Co., 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), which held that acts taken by Congress pursuant to the Commerce Clause could, if sufficiently clear, abrogate Eleventh Amendment immunity. In Seminole, the Court specifically held that Congress had no authority to abrogate State sovereign immunity under the Eleventh Amendment when Congress acted pursuant to the Commerce Clause; the power to abrogate only exists under Section 5 of the Fourteenth Amendment.[5] In addition, the Court set out precisely what Congress must do to abrogate the States’ immunity.
*1430 Two' requirements must be satisfied before Eleventh Amendment immunity can be successfully abrogated by Congress. Seminole, 517 U.S. at 54, 116 S.Ct. at 1123. First, Congress must have intended to abrogate that immunity by providing “a clear legislative statement” of its intent — “making its intention unmistakably clear in the language of the statute.”[6] Id. (citing Blatchford v. Native Village of Noatak and Circle Village, 111 S.Ct. 2578, 2584 [1991], and Dellmuth v. Muth, 491 U.S. 223, 224-25, 109 S.Ct. 2397, 2399-2400 [1989]). Second, Con-, gress must have attempted to abrogate this immunity under proper constitutional authority. In other words, Congress must have enacted the statute at issue using its Fourteenth Amendment, Section 5, enforcement powers. See Seminole, 517 U.S. at 62-63, 116 S.Ct. at 1127-28.[7]

I. Age Discrimination in Employment Act of 1967

Although I believe good reason exists to doubt that the ADEA was (or could have been properly) enacted pursuant to the Fourteenth Amendment, I will not decide that question today;[8] questions of constitutional power should be decided only as a last resort. Instead, I focus on the ADEA’s words and rest my decision on the lack of unmistakably clear legislative intent.
In searching the ADEA for an unequivocal statement of intent to abrogate, courts look only to the language of the statute itself. Dellmuth, 491 U.S. at 228, 109 S.Ct. at 2401 (“[E]vidence of congressional intent must be both unequivocal and textual ... [legislative history generally will be irrelevant” because if the intent is clear in the language of the statute, “recourse to legislative history will be unnecessary.”) (emphasis added). A court’s guess about Congress’s political will and subjective intentions — past, present, or future — is without consequence; only the statute and its language are to be considered. As directed by the Supreme Court, I do not go beyond the text of the ADEA in deciding whether it contains the requisite, unmistakably clear statement of intent to abrogate. Id.
This requirement — that the intent to abrogate be found in an unmistakably clear statement in the language of the statute — necessitates a high level of clarity by Congress. But, as the Supreme Court has observed, such a requirement of Congress is not too high when considering the important interests protected by the Eleventh .Amendment. The Eleventh Amendment recognizes that States, as a matter of constitutional law, are special entities — still possessing attributes of sovereignty. The Amendment strikes a balance between the federal government and the States. To alter that balance, Congress must be unmistakably clear in its intent. See Dellmuth v. Muth, 491 U.S. at 226, 109 S.Ct. at 2400.
No unequivocal expression of an intent to abrogate immunity is unmistakably clear in *1431 the ADEA. No reference to the Eleventh Amendment or to States’ sovereign immunity is included. Nor is there, in one place, a plain, declaratory statement that States can be sued by individuals in federal court. To me, an intent on the part of Congress to abrogate the States’ constitutional right to immunity is not sufficiently clear to be effective under Eleventh Amendment jurisprudence.[9]
In one section, 29 U.S.C. § 630, the ADEA defines employers to include States. In a different section, 29 U.S.C. § 626(b), which never mentions employers much less mentions States as defendants, the ADEA separately provides for enforcement by means of suits for legal or equitable relief in courts of competent jurisdiction. This statutory structure does not provide the clarity needed to abrogate States’ constitutional right to sovereign immunity. For abrogation to be unmistakably clear, it should not first be necessary to fit together various sections of the statute to create an expression from which one might infer an intent to abrogate. Although we make no definite rule about it, the need to construe one section with another, by its very nature, hints that no unmistakable or unequivocal declaration is present. More important, when we do construe the various ADEA sections together, abrogation never becomes “as clear as is the summer’s sun.”[10]
“A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment.” See Seminole, 517 U.S. at 54, 116 S.Ct. at 1123 (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 244, 105 S.Ct. 3142, 3149, 87 L.Ed.2d 171 (1985)). “[T]hat Congress grants jurisdiction to hear a claim does not suffice to show Congress has abrogated all defenses to that claim.” Blatchford, 501 U.S. at 786 n. 4, 111 S.Ct. at 2585 n. 4.
Still, Plaintiffs argue, and all three district courts seemed to agree, that Congress’s amendments to the ADEA in 1974 — adding States,, their agencies, and political subdivisions to the definition of “employer” (along with the original portions of the ADEA providing that the statute may be enforced in courts of competent jurisdiction) — represents the unmistakably clear legislative statement required to abrogate the Eleventh Amendment. This view (which is opposed by the State in Dickson) seems to clash with the Supreme Court’s precedents.
In Employees of the Dep’t of Public Health and Welfare v. Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), the Supreme Court held that the Fair Labor Standards Act (“FLSA”) did not provide a sufficiently clear statement of intent to abrogate the Eleventh Amendment. As initially enacted, the FLSA (like the ADEA) did not apply at all to States. In 1966, the FLSA was amended to include certain State agencies in the definition of employer. This *1432 amendment, the Court held, did not provide the clear statement of intent to abrogate immunity, .despite- the provisions allowing suits in courts of “competent jurisdiction” against employers who violated the FLSA. Id. at 281, 93 S.Ct. at 1617. “The history and tradition of the Eleventh Amendment indicate that by reason of that barrier a federal court is not competent to render judgment against a noneonsenting State.” Id. Like the ADEA, there was no dispute that the FLSA applied to the State agencies set out in the FLSA; the dispute was only about what kinds of enforcement were available when dealing with States as defendant-employers.[11]
In a later decision, Dellmuth v. Muth, the Supreme Court held that the Education of the Handicapped Act (EHA) did not abrogate Eleventh Amendment immunity despite provisions allowing suit in federal district court and many provisions referring to the States as parties in suits of enforcement. See Dellmuth, 491 U.S. at 226-27, 109 S.Ct. at 2400-02. That the pertinent statute (like the ADEA) never mentioned either “the Eleventh Amendment or the States’ sovereign immunity” was given weight. Id. at 230, 109 S.Ct. at 2402. Abrogation was not sufficiently clear. Id.
To include the States as employers under the ADEA, as in the FLSA, does not show an intent, that the States be sued by private citizens in federal court — the kind of suit prohibited under the Eleventh Amendment.[12] The ADEA is enforceable against the States, despite sovereign immunity, through forms of relief other than direct suits by citizens in federal court.[13] Congress may have had these other forms of enforcement in mind when it amended the statute to include States as employers. Thus, the general application of the law to the States does not make the requisite clear statement that Congress also intended the ADEA to abrogate the Eleventh Amendment specifically.
I do not dispute that some provisions of the ADEA make' States look like possible defendants in suits alleging violations of the ADEA. I accept that these provisions could support an “inference that the States were intended to be subject to damages actions for violations of the [ADEA].” Dellmuth, 491 U.S. at 230, 109 S.Ct. at 2402. But, as the Supreme Court stressed in Dellmuth, a permissible inference is not “the unequivocal declaration” that is required to show Congress’s intent to exercise its powers of abrogation. Id.[14]
*1433 I conclude that nothing in the ADEA indicates a truly clear intent by Congress to abrogate Eleventh Amendment immunity and, thus, States are entitled to immunity from suits by private citizens in federal court under the ADEA.

II. Americans With Disabilities Act

In sharp contrast to the ADEA, the ADA does include a clear statement of intent to abrogate Eleventh Amendment immunity: “A State shall not be immune under the eleventh amendment ...” 42 U.S.C. § 12202.[15]
Thus, the only argument that Eleventh Amendment immunity still exists is that the ADA was not enacted pursuant to the Fourteenth Amendment. We are not persuaded by this argument.
Unlike the ADEA, it is plain that Congress was invoking its Fourteenth Amendment enforcement powers when it enacted the ADA. See 42 U.S.C. § 12101(b) (“It is the purpose of this chapter ... (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment-”). Congress specifically found that “individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment.” 42 U.S.C. § 12101(a)(7).[16] We accept Congress’s analysis of the situation addressed by the ADA and agree with the courts that have addressed the issue: the ADA was properly enacted under Congress’s Fourteenth Amendment enforcement powers. See, e.g., Amos v. Maryland Dep’t of Pub. Safety and Correctional Servs., 126 F.3d 589, 603 (4th Cir.1997).[17]

Conclusion

The Eleventh Amendment is an important part of the Constitution. It stands for the constitutional principle that State sovereign immunity limits the federal courts’ jurisdiction under Article III. As such, Congress must make an unmistakably clear statement of its intent before a federal court can accept that States have been stripped of their constitutionally granted sovereign immunity. For me, the ADEA contains no unequivocally clear statement of such intent. The ADA does. And the ADA was enacted under the authority of the Fourteenth Amendment.
For the reasons stated in our combined opinions, we hold that the ADEA does not abrogate States’ Eleventh Amendment immunity but that the ADA does do so. Therefore, in Kimel, we REVERSE and REMAND for dismissal. In Dickson, we AFFIRM in part and REVERSE in part and REMAND for further proceedings. In MacPherson, we AFFIRM the district court’s decision.

. Judge Edmondson announces the judgment for the Court in this case. Judge Cox concurs in the result in Part I of Judge Edmondson's opinion but decides the issue on a different basis. Chief Judge Hatchett dissents in Part I. Chief Judge Hatchett concurs in the result in Part II of Judge Edmondson's opinion but also writes separately on the issue. Judge Cox dissents in Part II of the opinion.

. Only case number 96-3773, Florida Dep’t of Corrections v. Dickson, presents the Eleventh Amendment issue for the ADA.

. Plaintiff Wellington Dickson claims we lacked jurisdiction to hear the Stale of Florida’s appeal of the denial of its motion to dismiss. This appeal is properly before this Court under the collateral order doctrine. Like qualified immunity, a decision on this issue after trial would defeat the State’s right to be immune from trial. The Eleventh Amendment provides the States with immunity from suit, not just immunity from damages. See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993).

. The Eleventh Amendment only prohibits suits by private parties against unconsenting States in federal court. See Maine v. Thiboutot, 448 U.S. 1, 9 n. 7, 100 S.Ct. 2502, 2507 n. 7, 65 L.Ed.2d 555 (1980) (Eleventh Amendment principles are not applicable to suits in state court.).

. The enforcement provision of the Fourteenth Amendment provides:
Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.
U.S. Const, amend. XIV, § 5.

. For me, "unmistakably" strongly intensifies the implications of "clear;” and I take that message to heart.

. The Eleventh Amendment can also be abrogated by a State’s waiver — actual consent — but no one claims that a waiver occurred in these cases.

. This doubt is suggested by a variety of considerations, to state briefly a few; (1) where the Supreme Court has held that Congress enacted a statute pursuant to its Commerce Clause powers, we must be cautious about deciding that Congress could have acted pursuant to a different power. See League of United Latin Amer. Citizens, Council No. 4434 v. Clements, 986 F.2d 728, 758-59 (5th Cir.1993) ("Although there was some argument that Congress acted pursuant to its enforcement powers under the Fourteenth Amendment in passing the ADEA, the [Supreme] Court in Gregoryf v. Ashcroft] ultimately concluded that Congress had acted only pursuant to its Commerce Clause powers.”) (emphasis added); (2) where two statutes are enacted together in the same bill, like the ADEA and the Fair Labor Standards Act (“FLSA”), it seems reasonable that Congress enacted the bill. — all portions of it — pursuant to the same authority. See 120 Cong. Rec. 7337 (1974) (FLSA enacted only pursuant to Congress's Commerce Clause power, especially considering that the FLSA [like the ADEA] initially only applied to private employers, who are not the proper subjects of Fourteenth Amendment enforcement); (3) when addressing a characteristic, such as age, that is not the kind of immutable characteristic as race, gender, or national origin, it is questionable that Congress could lawfully be acting to enforce the Fourteenth Amendment. See Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 310, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (Age does not rise to the level of a suspect or quasi-suspect class: it is a stage of life through which all persons go.).

. The ADEA presents a different situation from the one in Seminole, where the Court held that Congress clearly expressed its intent to abrogate immunity when Congress said, among other things, that jurisdiction was vested in “[t]he United States district courts ... over any cause of action ... arising from the failure of a State to enter into negotiations ... or to conduct such negotiations in good faith....” Indian Gaming Regulatory Act, 25 U.S.C. § 2710(d)(7)(A)(I) (emphasis added). This section, along with the remedial scheme available to a tribe that files suit under section 2710, leaves no doubt "as to the identity of the defendant in an action under [this section].” Seminole, 517 U.S. at 56, 116 S.Ct. at 1124.
Unlike the ADEA, the Indian Gaming Regulatory Act at issue in Seminole creates a scheme of federal regulation of Indian-tribe gambling. Other than the suits authorized against States for their lack of good faith negotiations for Tribal-State compacts, the only enforcement provision of the Act is a civil fine that can be imposed by the Commission created by the Act. Thus, the only suits available to an entity other than the Commission are available to Indian tribes. And the only entities that the tribes can sue under the Act are States: no other means of enforcement are established.
The single-mindedness of the Act adds much clarity to its words. The ADEA, on the other hand, is more complicated. As a general proposition, it doubtlessly permits suits against a wide range of employers (public and private) and for various remedies (legal and equitable) and in different forums (state and federal courts). But this fact sheds little light on the narrow question of suits by individuals against States in federal court.

. For background, see William , Shakespeare, King Henry the Fifth act 1, sc. 2 (speech of Canterbury outlining Henry’s claim to the French throne).

. The ADEA's 29 U.S.C. § 626(b) refers to sections of a different Act, the FLSA, particularly to some of the FLSA enforcement provisions at issue in Employees. This statutory, structure is hardly straightforward. In 1974, after Employees, Congress amended the FLSA. Those amendments changed the FLSA’s enforcement provision to provide that suits could be brought against "employers (including a public agency)” in "any Federal or State court of competent jurisdiction.” 29 U.S.C. § 216. (The FLSA as amended is similar to 29 U.S.C. § 626[c][l] in the ADEA itself.) Still, a federal court lacks "competent jurisdiction” if the Eleventh Amendment prohibits the suits against the State. Employees, 411 U.S. at 281, 93 S.Ct. at 1617. So, making it specific that suits can be brought in federal court does not make it more clear that suits against States by private parties in federal court are in order. Other, private employers could be the intended defendants in such suits. And equitable relief might be available against state officials in federal courts. See Edelman v. Jordan, 415 U.S. 651, 663-64, 94 S.Ct. 1347, 1356-57, 39 L.Ed.2d 662 (1974).

. Plaintiffs’ argument in this appeal mistakenly frames this issue as one of the constitutionality of the relevant statutes. The statutes’ basic constitutionality is not in jeopardy. This appeal only addresses whether the ADEA and ADA can be enforced through suits by private parties in federal court against offending States.

. For examples of other methods of ensuring the States’ compliance with federal law, see Seminole, 517 U.S. at 71 n. 14, 116 S.Ct. at 1131 n. 14.

. Some circuits have held that Congress did clearly express its intent to abrogate States’ immunity in the ADEA. See, e.g., Hurd v. Pittsburg State Univ., 109 F.3d 1540 (10th Cir.1997); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690 (3d Cir.1996); Davidson v. Board of Governors of State Colleges and Univs., 920 F.2d 441 (7th Cir.1990); Ramirez v. Puerto Rico Fire Serv., 715 F.2d 694 (1st Cir.1983). I respect their views. These courts determined that the amendments adding States to the definition of "employer,” read in connection with enforcement provisions permitting suits against violators of the ADEA, made it sufficiently clear that Congress intended to abrogate Eleventh Amendment immunity: Compare 29 U.S.C. § 623 (describing what conduct is unlawful) with 626(b), ( c) (permitting civil suits "in any court of competent jurisdiction” for legal or equitable relief as may be *1433 appropriate to effectuate the purposes of the Act) and 630 (including States in the definition of "employer”). Although, to me, these courts are drawing a permissible inference from the statute, I cannot agree that the ADEA's language includes an unequivocal declaration of abrogation of States’ immunity as required by the Constitution and the Supreme Court. It is just not "unmistakably clear” to me. See generally Humenansky v. Board of Regents of the Univ. of Minnesota, 958 F.Supp. 439 (D.Minn.1997) (also concluding the ADEA lacks the necessary “unequivocal declaration” of intent to abrogate).

.I do not say that certain magic words must be used to abrogate immunity. I accept that Congress could unmistakably signal abrogation of immunity in a variety of ways, and we write no general rules today. See 42 U.S.C. § 2000e-5(f)(1) (where Title VII speaks of suits by aggrieved persons against "a government, governmental agency, or political subdivision” while discussing suits in federal district courts) and Fitzpatrick v. Bitter, 427 U.S. 445, 452, 96 S.Ct. 2666, 2670, 49 L.Ed.2d 614 (1976) (concluding that Title VII abrogates Eleventh Amendment immunity). But when considering abrogation in both the ADEA and the ADA, I cannot help but see the clarity with which Congress addressed sovereign immunity in the ADA. Comparing the language of these two statutes further spotlights the ambiguous nature of the ADEA’s treatment of Eleventh Amendment immunity.

. By the way, an express invocation of Fourteenth Amendment powers is not present in the ADEA. Nor did Congress make findings in the ADEA that persons of a particular age constitute a discrete and insular minority.

. In Kimel, the State presents one further issue: That should we determine the ADEA suit cannot be maintained against the State, we should remand with instructions to the district court to dismiss the supplemental state claim under the Florida Human Rights Act. That is the proper decision, and that claim is remanded to the district court with instructions that it be dismissed. See Eubanks v. Gerwen, 40 F.3d 1157, 1161-62 (11th Cir.1994).