

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-16-2001

# County of Morris v. Nationalist Movement

Precedential or Non-Precedential:

Docket 00-2621

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"County of Morris v. Nationalist Movement" (2001). *2001 Decisions*. Paper 266.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/266

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 16, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 00-2621 & 00-3569

COUNTY OF MORRIS

v.

NATIONALIST MOVEMENT, Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 00-cv-02480)
District Judge: Honorable John W. Bissell

Argued: April 17, 2001

Before: BECKER, Chief Judge, MCKEE, Circuit Judge, and
POLLAK, District Judge.*

(Filed: November 16, 2001)

      RICHARD BARRETT, ESQUIRE
       (ARGUED)
      P.O. Box 2050
      Learned, MS 39154

Counsel for Appellant

_____

* The Honorable Louis H. Pollak, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

        RONALD KEVITZ, ESQUIRE
          (ARGUED)
        Office of County Prosecutor
        Morris County, P.O. Box 900
        Court and Washington Streets
        Morristown, New Jersey 07963

        Counsel for Appellee

OPINION OF THE COURT

POLLAK, District Judge.

On May 10, 2000, appellee, the County of Morris, New Jersey ("the County"), brought this declaratory judgment action in state court to establish the constitutionality of its policies regulating the private use of county facilities in the face of threatened litigation by the Nationalist Movement, a Mississippi-based private non-profit organization that sought to hold (and, in the event, did hold) a parade and rally in Morristown, the county seat, on July 4, 2000. After the case was removed to federal court, the District Court determined that the steps and lawn of the Morris County Courthouse were not a public forum and, thus, the County could reasonably preclude the Nationalist Movement from using the courthouse steps for their rally. Additionally, the District Court held that some portions of the County's policies did, and some did not, pass constitutional muster. On appeal, the Nationalist Movement contends that the District Court erred when it decided that the Nationalist Movement did not have a First Amendment right to demonstrate on the steps and lawn of the courthouse. The Nationalist Movement also contests the District Court's decision to deny its application for attorney's fees.

We conclude that events which occurred subsequent to the contested orders render this appeal moot as to the Nationalist Movement's claim of right to use the courthouse steps and lawn, though not as to the question of attorney's fees.

I. Background

The scenario giving rise to the present action began with a request by the Nationalist Movement for permission to

2

hold a parade and rally in Morristown on July 4, 2000. From the correspondence between the Nationalist Movement and the County that followed, areas of

disagreement became apparent as to the exact location of the planned event and the parties' respective financial responsibility for costs related to the demonstration.

In a letter dated March 21, 2000, Richard Barrett, as First Officer of the Nationalist Movement, informed the Morris County Board of Freeholders that the group intended to hold an "Independence from Affirmative-Action Day" parade and rally in Morristown on July 4. The letter stated that the purpose of the event was to "celebrate the Fourth of July, call for abolition of Affirmative-Action and voice support for former State Police Chief, Carl Williams." As envisioned by the Nationalist Movement, the parade would take place on a public street and culminate in a rally on the steps and lawn of the County Courthouse. Specifically, the Nationalist Movement requested the following accommodations:

> Kindly reserve area from 9:00 AM (at which time decorating will take place, followed by assembly at the Green for paraders at 11:00 AM) until 4:00 PM. The parade will step off at Noon from the Green, proceed to and around the Courthouse. The rally -- including ceremonies, petitions and speeches -- will begin at 12:30 PM at the Courthouse steps at Washington Street and last until approximately 3:00 PM, followed by disassembly of the equipment and signing of petitions. The event will be open to the pro-majority public, who we decide to admit.

Further, Mr. Barrett's letter stated that the Nationalist Movement expected approximately 50 paraders and 100 spectators, requested adequate security to deal with anticipated violent counter-demonstrators, and sought assurance that it would have access to an electrical outlet, restroom facilities, and parking.

In a letter dated April 26, 2000, the County Administrator, James J. Rosenberg, sent Mr. Barrett a copy of the then-Policy and Procedure Guidelines No. 4:1.01 ("policy 4:1.01"), which governed the use of public facilities,

3

together with related forms for completion. County Administrator Rosenberg added:

> In view of the potential damages, that you have brought to my attention, which may occur during your anticipated rally on County property here in Morristown, you will be required to provide insurance in the amount of $3,000,000 for liability insurance for bodily injury and $5,000,000 aggregate for property damage liability. Said insurance shall conform and comply with all aspects of Section IV, Insurance Requirements of the above stated Policy and Procedure.

The County Administrator also stated that, because July 4 was a holiday, the courthouse would be closed and that -- due to a concern regarding the volume of holiday traffic -- Washington Street (the street at the front of the courthouse) would not be closed. As an alternative to the Nationalist Movement's proposed plans, the County Administrator suggested that the Nationalist Movement assemble at the rear of the courthouse on the Ann Street Parking Deck. Moreover, the letter provided that:

> All parades, assemblies, rallies, and the like must assume the responsibility and pay for the costs of additional police, fire and public works support above the normal daily levels of staffing. Additional support agreed to prior to the event shall be used as a guide. However, costs assessed to the event will be actual, based on the number of personnel required and utilized.

Mr. Barrett, on behalf of the Nationalist Movement, responded with a May 4, 2000 letter, in which he (a) undertook to "appeal" the County Administrator's letter to the Board of Freeholders, and (b) questioned the constitutionality of policy 4:1.01 on First Amendment grounds. At the same time, the Nationalist Movement completed and returned the application forms, noting that by doing so the group was not waiving its objections to the fee and rental provisions. Moreover, the Nationalist Movement indicated that it would not agree to relinquish use of the front of the courthouse or Washington Street and warned that it "intend[ed] to hold the County and any and

4

all individuals individually liable" under 42 U.S.C. S 1983 for violations of the group's First Amendment rights.

The County then filed a declaratory judgment action in state court seeking judicial confirmation -- prior to the anticipated event -- of the constitutionality of the actions the County intended to take pursuant to policy 4:1.01. The Nationalist Movement removed the case to the United States District Court for the District of New Jersey and filed a counterclaim under 42 U.S.C. SS 1983 and 1985, alleging violation of its First Amendment rights, along with an application for preliminary and permanent injunctions, compensatory and punitive damages, attorney's fees, and declaratory relief.

II. The District Court's Rulings

After denying a motion by the County to remand the case to state court, the District Court conducted an evidentiary hearing over the course of four days and issued an oral opinion from the bench on June 22, 2000. The opinion announced orally was reflected in a written order dated June 27, 2000. Prior to the ruling, the parties had agreed to a parade route and had agreed that the Nationalist Movement would be allowed to admit only supporters to its rally. The District Court noted these areas of agreement, concluding: "Condensed to its essence, this case requires a determination of what areas involved are public forums and what conditions which the County would or could impose upon the Nationalist Movement are permissible." Finding ample alternative venues for the rally, the District Court held that the steps and lawn of the courthouse did not constitute a public forum either by tradition or by designation. Rather, the District Court found that the steps were "merely a means of ingress and egress" to the courthouse, and that the lawn was not a park but an "aesthetic enhancement" to the building. Thus, the District Court held that the County might place reasonable restrictions on the use of those areas if those restrictions did not constitute "an effort to suppress expression merely because public officials oppose the speaker's view." The District Court concluded that previous use of the courthouse steps and front lawn for an annual county-sponsored Memorial Day observance "does not transform

5

that area into a public forum for other persons or entities; nor does the occasional, impromptu press conference or announcement by a political candidate from the Courthouse steps." The District Court stated:"This Court cannot and will not dictate where [the rally] will take place." However, the District Court suggested that the County close all or part of Court Street for the holiday, specifically the portion of Court Street abutting Washington Street near the front of the courthouse.

The District Court also examined the County's policy 4:1.01 which, the District Court noted, represented the sole written authority upon which the County relied when it responded to the Nationalist Movement's request. Despite a finding that the County's decision-making had not in fact been influenced by personal or institutional opposition to the content of the Nationalist Movement's message, the District Court determined that portions of policy 4:1.01 were invalid and unenforceable. In particular, the District Court found (a) that the County's hold-harmless provision was overly broad;[1] (b) that a provision subjecting all applications to approval by the County Administrator constituted, on its face, "a totally discretionary realm for the County Administrator, with no expressed standards and one, frankly, which at least has a potential for abuse"; and (c) that a provision allowing the County to charge a fee for the use of its facilities without providing any schedule of fees, a cap, or provisions for waivers amounted to"the very type of indefinite, imprecise and potentially arbitrary provision which the Forsyth County decision[Forsyth County v. Nationalist Movement, 505 U.S. 123 (1992)] determined to be unconstitutional." Likewise, the District Court found the insurance provision to be unenforceable. Additionally, the District Court determined that it was unreasonable for the County to assess against the Nationalist Movement the anticipated costs of police, fire, and other emergency services. Finally, the District Court denied the Nationalist Movement's S 1983 counterclaim as premature based on the finding that the County -- which had filed its declaratory judgment action to ensure that it

---

1. The District Court encouraged the parties to negotiate a more limited hold-harmless provision.

conformed its behavior to the requirements of the First Amendment -- had not yet violated any of the Nationalist Movement's constitutional rights. Thus, the District Court concluded that the Nationalist Movement was not a prevailing party under its counterclaim but did not rule out an award of attorney's fees with respect to the County's declaratory judgment action.

On July 4, 2000, the Nationalist Movement held its parade and rally in Morristown. Although the record does not contain a full description of the event, it appears that members of the Nationalist Movement marched on Washington Street in the vicinity of the County Courthouse but did not enter onto the courthouse lawn or conduct their rally from the courthouse steps.2

_____

2. By letter to Ronald Kevitz, Morris County Counsel, dated July 21, 2000, the Nationalist Movement requested permission to use the front steps and lawn of the Morris County Courthouse during an Independence Day parade and rally to be held on July 4, 2001. Approximately six months later, on December 12, 2000, the County revised policy 4:1.01, perhaps in an effort to remove those elements that had been held unconstitutional by the District Court in its June 22, 2000 bench opinion. Revisions, some minor and some more substantial, were made to a number of provisions, including those dealing with the application procedures, the level of discretion vested in the County Administrator, the fee provision, and the insurance requirements.

In a June 23, 2001 letter, the Nationalist Movement informed this court that it had information that the County had changed its policy regarding use of the courthouse steps and lawn. The County responded on June 28, 2001 by submitting a certified copy of the minutes of the June 19, 2001 meeting of the County Board, which included the following statement: "The safety of all parties is of paramount concern to the Board of Chosen Freeholders; therefore, we have decided to open the front lawn of the courthouse for public purpose[sic]. This decision was based on further consideration and deliberation of last year's experience, and input from law enforcement." In the accompanying letter of June 28, 2001, the County asserted that the change in policy was not relevant to this litigation.

According to media reports, the Nationalist Movement -- in the person of Richard Barrett -- did indeed return to Morristown on July 4, 2001 for a second march and rally during which "Barrett spoke from the courthouse steps." Scott Fallon & Yung Kim, 350 Cops Guard Racist Speaker, The Record, July 5, 2001, at A1.

On June 29, 2000, the Nationalist Movement filed a motion for attorney's fees in the amount of $48,750.15. The motion was supported by an affidavit from Mr. Barrett -- this time as counsel for the Nationalist

Movement -- in which he included a list of the hours he spent preparing and litigating the case along with a catalog of expenses related to copies, a per diem rate, an "allotment" for time away from his office and home, auto rental, airfare, and filing fees. On July 28, 2000, Mr. Barrett filed a supplemental affidavit in support of the Nationalist Movement's application for attorney's fees.

On August 8, 2000, the District Court denied the Nationalist Movement's application for an award of attorney's fees for its role as defendant in the County's declaratory judgment action. The District Court reasoned that, because the Nationalist Movement could not establish a violation of its rights under S 1983, the provision allowing for a grant of attorney's fees under S 1988 was not triggered. Alternatively, assuming arguendo that S 1988 did authorize consideration of the Nationalist Movement's application for attorney's fees, the District Court determined that it was nonetheless proper to deny such an award. The District Court reasoned that, notwithstanding the Nationalist Movement's success in challenging certain provisions of policy 4:1.01, the Nationalist Movement did not prevail on the central issue of access to the courthouse steps and lawn, several issues were resolved by consent, counsel made "no effort to distinguish between time spent" on successful rather than on unsuccessful claims, and "[t]he Nationalist Movement's application for attorney's fees and expenses . . . is so flawed, unsupported and inflated as to draw into question the good faith of that submission. At the very least the Court could not properly quantify amounts allegedly due." On October 2, 2000, the District Court denied the Nationalist Movement's motions for reconsideration of the June 22, 2000 bench opinion, the June 27, 2000 order reflecting the June 22 opinion, and the August 8, 2000 order.

III. Discussion

A. Mootness

We first address the issue whether this declaratory judgment action -- brought to determine the respective

rights of the parties with respect to the July 4, 2000 event -- is now moot. Article III of the Constitution provides that the "judicial Power shall extend to . . . Cases . . . [and] to Controversies." U.S. Const. art. III, S 2. This grant of authority embodies a fundamental limitation restricting the federal courts to the adjudication of "actual, ongoing cases or controversies." Khodara Envtl., Inc. v. Beckman, 237 F.3d 186, 192-93 (3d Cir. 2001). The mootness doctrine is centrally concerned with the court's ability to grant effective relief: "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996). Moreover, the requirement that an action involve a live case or controversy extends through all phases of litigation, including appellate review. See Khodara Envtl., Inc., 237 F.3d at 193 (citing Lewis v. Continental Bank Corp., 494 U.S. 477 (1990)).

Both parties urge this court to reach the merits. The Nationalist Movement contends that -- notwithstanding the fact that July 4, 2000 has come and gone -- this case survives a mootness inquiry because it is "capable of repetition, yet evading review." S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911); DeFunis v. Odegaard , 416 U.S. 312, 318-19 (1974). Similarly, the County contends that this case is not moot because the Nationalist Movement "apparently intends to pursue [holding an Independence Day rally on the courthouse steps and lawn] until such future time as the County agrees to it or a court orders it."3 We are not persuaded by either variation of what is essentially the same argument. The exception from the mootness doctrine for cases that are technically moot but "capable of repetition, yet evading review" is narrow and available "only in exceptional situations." City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983); Weinstein v. Bradford, 423 U.S. 147, 148-49 (1975). This is not such a

_____

3. The County also invites us to decide the mootness question according to New Jersey law on the ground that it initially filed its declaratory judgment action under state law. However, we are bound by the justiciability threshold established by the United States Constitution.

situation. The instant declaratory judgment action was instituted in order to resolve specific questions regarding what was then an upcoming parade and rally scheduled for July 4, 2000. The District Court conducted hearings on an expedited basis and rendered an opinion in time to guide the parties' conduct during that event. With respect to any dispute that might arise in connection with future Independence Day activities, the parties, if unable to resolve their differences, would have ample opportunity to bring a new lawsuit and to develop a record reflective of the particular circumstances attendant on that dispute. Thus, we will dismiss as moot that aspect of the Nationalist Movement's appeal that addresses whether the courthouse steps and lawn constitute a public forum.4

B. Attorney's Fees

We now turn to the question of attorney's fees. As a preliminary matter, we note that an award of attorney's fees with respect to the trial phases of a case is not precluded when a case becomes moot during the pendency of an appeal. See Jersey Cent. Power & Light Co. v. New Jersey, 772 F.2d 35, 41 (3d Cir. 1985); LaRouche v. Kezer, 20 F.3d 68, 75 (2d Cir. 1994). The Nationalist Movement contends that the District Court erred when it denied its application

_____

4. Our mootness determination is fortified by the fact that, on December 13, 2000, the County revised portions of policy 4:1.01 which the District Court had held unconstitutional in its June 22, 2000 opinion. Additionally, on June 19, 2001, the County revised its policy with respect to the substantive issue appellant Nationalist Movement presses on this appeal -- that is, private use of the courthouse steps and lawn. See supra note 2. Other courts that have addressed comparable situations have also found mootness. See Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc., 404 U.S. 412, 414-15 (1972) (determination of constitutionality of specific application of repealed statute is inappropriate); Khodara Envtl. Inc., 237 F.3d at 193 (passage of an amendment to federal statute mooted litigation challenging prior version of statute); Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1182 (10th Cir. 2000). Thus, evidence that appellant has expressed its intent to hold Independence Day events at the courthouse in 2002 and 2003 cannot breathe life back into the controversy considered by the District Court with respect to the events of July 4, 2000.

for attorney's fees in toto. Specifically, the Nationalist Movement asserts that its success in defending against the declaratory judgment action brought by the County established it as a prevailing party entitled to attorney's fees under 42 U.S.C. S 1988. The County argues that the Nationalist Movement is not entitled to an award of attorney's fees because the County initiated this declaratory judgment action and, thus, no incentive was needed to spur the private bar to handle this case. In the alternative, the County adopts the District Court's argument that, assuming arguendo that the Nationalist Movement was a prevailing party, the District Court did not abuse its discretion when it denied an award of attorney's fees on the grounds that (a) the issues on which the Nationalist Movement prevailed did not constitute the central issues in dispute and (b) the fee application was highly irregular and exaggerated.

While we exercise plenary review over the legal issues relating to the appropriate standard under which to evaluate an application for attorney's fees, see Washington v. Philadelphia County Ct. Com. Pl., 89 F.3d 1031, 1034-35 (3d Cir. 1996), we review the reasonableness of a district court's award of attorney's fees for an abuse of discretion, see Krueger Assocs., Inc. v. Am. Dist. Tel. Co. of Pa., 247 F.3d 61, 69 (3d Cir. 2001); Washington, 89 F.3d at 1034.

In this case, we are asked to review three aspects of the District Court's ruling on attorney's fees: (1) whether S 1988 supports an award of attorney's fees in light of the dismissal of the Nationalist Movement's S 1983 counterclaim; (2) whether the Nationalist Movement was a "prevailing party"; and, in the alternative, (3) whether the Nationalist Movement's application was so inadequate as to justify a complete denial. The first two questions raise legal issues and, thus, warrant plenary review. The remaining question directed at the adequacy of the fee application implicates both the legal standard for evaluating the specificity of an application (over which we exercise plenary review), see Washington, 89 F.3d at 1038, and the factual finding that certain expenses billed were excessive and unreasonable (which we review for clear error), id. at 1039.

11

Under the general rule, each party bears its own costs and attorney's fees. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Here, the Nationalist Movement relies on 42 U.S.C. S 1988(b) to authorize an award of attorney's fees. Section 1988(b) states in pertinent part: "In any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Although the statute expressly refers to a district court's discretion, it is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances. See Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968).

We first consider whether the dismissal of appellant's S 1983 counterclaim justified denial of an award of attorney's fees in this case. The District Court stated:

> [A]lthough the issues tried included several which implicated the "rights [of the Nationalist Movement] secured by the Constitution," [quoting 42 U.S.C. S 1983] there was never a "deprivation" of such rights at any time through to and including July 4, 2000. To reiterate, before making any decisions which could have trod upon such rights, Morris County sought, received and followed the rulings of a court of competent jurisdiction in order that there be no "deprivation" of the Nationalist Movement's rights. Having failed to establish a violation of S 1983 (or any other statute referred to in S 1988) the Nationalist Movement is not entitled to an award of attorney's fees.

The District Court was correct in ruling that S 1988(b) does not provide for attorney's fees independent of a violation of one of the statutes enumerated in that provision, here S 1983. See Tunstall v. Office of Judicial Support of the Ct. Com. Pl., 820 F.2d 631, 633 (3d Cir. 1987). However, we disagree with the District Court's conclusion that appellant did not prevail on a S 1983 claim. We need not revisit the dismissal of appellant's counterclaim in order to ascertain that the County's declaratory judgment action is the mirror image of aS 1983 suit. The District Court acknowledged that the issues

12

underlying the Nationalist Movement's S 1983 counterclaim were identical to the issues at stake in the County's declaratory judgment action. Thus, to conclude that appellant did not prevail on any issues under S 1983 would grant unwarranted significance to the fact that the Nationalist Movement was nominally the defendant rather than the plaintiff in this case. See Ams. United for Separation of Church & State v. Sch. Dist., 835 F.2d 627, 631 (6th Cir. 1987) (S 1988 concerned with substance, not form).

Because the Nationalist Movement indisputably prevailed on significant issues in the present action to the extent that portions of policy 4:1.01 were held unconstitutional, we conclude that the Nationalist Movement is a prevailing party under S 1988. See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Servs., 532 U.S. 598, ___, 121 S. Ct. 1835, 1839 (2001) (a prevailing party"is one who has been awarded some relief by the court"); Farrar v. Hobby, 506 U.S. 103 (1992) (holding that a plaintiff who wins only nominal damages is a prevailing party under S 1988). Thus, we will remand this case to the District Court for further proceedings to establish the proper award of attorney's fees.5

IV. Conclusion

For the reasons stated above, we (1) dismiss as moot the Nationalist Movement's appeal from the District Court's rejection of the Nationalist Movement's claim of a right to use the courthouse steps and lawn for a rally, and (2)

_____

5. The District Court stated that the Nationalist Movement's fee application was deficient because Mr. Barrett made"no effort to distinguish between time spent" on successful rather than on unsuccessful claims. It is, of course, within the District Court's authority
to demand clear information upon which to base an award of attorney's fees.

The District Court also criticized appellant's application for the inclusion of numerous "phantom" transportation expenses and for including an unsubstantiated "allotment" for time counsel spent away from his office to handle the present case which amounted to "more than 40% of the total legal fees sought." There would appear to be substantial legitimacy in these criticisms.

remand the case to the District Court for further proceedings consistent with this opinion as to the

Nationalist Movement's application for attorney's fees.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit