**THE MEDICAL SOCIETY OF NEW JERSEY; and John Doe, M.D., Plaintiffs,**

v.

**Mark S. HERR, Individually and in his official capacity as Director of the State of New Jersey, Department of Law and Public Safety, Division of Consumer Affairs; and The State of New Jersey, Defendants.**

No. CIV.A. 01–2003(JWB).

United States District Court,
D. New Jersey.

March 21, 2002.

Kern Augustine Conroy & Schoppmann, By Robert J. Conroy, Esquire, Bridgewater, NJ, or Plaintiffs.

William J. Farmer, Jr., Attorney General of New Jersey, By Jeffrey C. Burstein, Senior Deputy Attorney General, Division of Law, Newark, NJ, for Defendants.

### OPINION

BISSELL, Chief Judge.

This matter comes before the Court on defendants' motion to dismiss the Complaint on several grounds. Plaintiff John Doe, M.D., a physician with a record of substance abuse, sought certification from the state licensing board to practice medicine in New Jersey without limitation. When the board forwarded his application to the Director of Consumer Affairs for his approval, plaintiff and a private organization representing medical practitioners filed suit alleging violation of Title II of

the Americans with Disabilities Act and the constitutional guarantee of equal protection of the law. Presently, before the Court is defendants' motion to dismiss certain claims for lack of subject matter jurisdiction and others for failure to state a claim.

This Court's subject matter jurisdiction is founded on 28 U.S.C. § 1331.

### FACTS

#### A. The Parties

Founded in 1766 and incorporated in 1877, plaintiff Medical Society of New Jersey ("MSNJ") is a New Jersey corporation that serves as the State's primary organization of physicians. MSNJ seeks to promote the quality of health care and health services for all citizens of the State and to supply leadership and assistance to its physician members. To fulfill this mission, MSNJ regularly participates in important issues in the judicial, legislative, and regulatory arenas. (Compl., ¶ 3).

Plaintiff John Doe, M.D. ("Doe") is a physician licensed to practice medicine and surgery in the States of New Jersey, Pennsylvania and Massachusetts, residing in Monmouth County, New Jersey, and is a member of MSNJ.[1] (Compl., ¶ 4).

Defendant Mark S. Herr is the Director of the Division of Consumer Affairs of the Division of Law and Public Safety of the State of New Jersey. (Compl., ¶ 5).

#### B. Plaintiff's Claims and the Underlying Allegations

This action involves the efforts of plaintiff Doe, a physician who has suffered from

---

1. Doe is identified by a pseudonym for purposes of this action, however, both sides have submitted certain individual facts concerning Doe's prior history of substance abuse and the state's handling of this individual's applications for licensure with the New Jersey Board of Medical Examiners. The Court takes note that no material discrepancies have been raised by the two sides in connection with the pseudonymous identification of plaintiff Doe.

substance abuse problems, to secure from the New Jersey Board of Medical Examiners ("the Board") an unrestricted medical license. As part of the Division of Consumer Affairs, the Board is charged with maintaining standards for the practice of medicine that are consistent with law and public safety. Although substance abuse by a physician is a serious concern of the Board, in practice, many cases of dependency are treated outside of public disciplinary proceedings through a program funded and sponsored by MSNJ. This program, dubbed the Physicians' Health program ("PHP"), is a comprehensive rehabilitation program that serves physicians with substance abuse problems. (Compl., ¶¶ 10, 11). With respect to past physicians who have been treated successfully under the PHP, the Board has granted them medical licenses that are ostensibly unrestricted, but have been subject to conditions contained in a so-called private letter of agreement between the physician and the Board. Thus, the final issuance of a private letter of agreement has commonly been a necessary condition to the grant of a medical license to a physician with a record of substance abuse.

The Complaint alleges the defendant Herr has adopted a policy of reviewing all such private letters of agreement to be issued by the Board and refusing to permit these letters to be issued "in any case involving a disability caused by abuse of and/or addiction to prescription medications and/or controlled dangerous substances." (Compl., ¶ 14). Instead, plaintiffs allege, he has determined that such cases must be treated as matters of public record. In particular, they allege that Mr. Herr interfered with the Board's administration of plaintiff Doe's application for an unrestricted medical license by holding up the issuance of a private letter of agree-

ment. This treatment amounts to discrimination, they assert, because it differs from that accorded to physicians who have transgressed disciplinary standards not concerning substance abuse. Concerning those physicians, Mr. Herr does not intercede in the Board's granting of licenses contingent upon private letters of agreement. (Id., ¶ 16). Plaintiffs assert that Mr. Herr is without legal authority to take such actions, which they deem to be an interference with the Board's functions. (Id., ¶ 15).

It is further alleged that Doe has been subjected to potential discipline by the Board by reason of a disability connected to substance abuse problems, notwithstanding his successful completion of the PHP. A private letter of agreement containing conditions pertaining to the ongoing monitoring was to be issued by the Board concerning Doe, but such was withheld by defendant Herr and accompanied by a threat of public disclosure. As a result, Doe is alleged to have been placed in professional limbo. (Id., ¶¶ 18, 19).

On the basis of these allegations, the Complaint advances three claims. Count I is asserted against Mr. Herr and the State under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA"), alleging discrimination toward Doe and disabled physicians, generally. Count II is asserted under 42 U.S.C. § 1983, and alleges that Mr. Herr deprived plaintiff Doe of the equal protection of the law. Count III is a claim brought directly under the Constitution against both defendants and alleges violation of the equal protection under the Fourteenth Amendment.[2] Count I contains no claim for damages, only declaratory and injunctive relief in addition to costs and fees. Compensatory damages, as well as declar-

2. In their opposition papers to this motion, plaintiffs have indicated they will voluntarily withdraw Count III to the extent that it is directed against Mr. Herr.

atory and injunctive relief, are sought in Counts II and III.

## DISCUSSION

### I. Defendants' Motion for Dismissal of All of MSNJ's Claims and of Doe's Claim Under the ADA is Granted *for Lack of Subject Matter Jurisdiction.*

#### A. *Standard for rule 12(b)(1) Motion*

Defendants have moved pursuant to Federal Rule of Civil procedure 12(b)(1) for dismissal of certain claims for lack of subject matter jurisdiction. As discussed in greater detail below, the particular issues raised in this aspect of defendants' motion are properly considered as attacking the existence of subject matter jurisdiction. Before proceeding to the substance, however, it is worthwhile to review the proper standard to be applied to a Rule 12(b)(1) motion.

In recognition of the confusion courts have faced over the standard to be applied to a motion to dismiss for lack of subject matter jurisdiction, the Third Circuit has devoted substantial discussion to distinguishing 12(b)(1) motions from other dispositive motions, particularly those made pursuant to Federal Civil Rules 12(b)(6) and 56. In *Mortensen v. First Federal Savings & Loan Ass'n,* the court of appeals sought to clarify the issue by dividing Rule 12(b)(1) motions into two categories: facial and factual. 549 F.2d 884, 891 (3d Cir.1977). A facial attack on jurisdiction is directed to the sufficiency of the pleading as a basis for subject matter jurisdiction. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Gould Electronics Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000). Thus, a facial challenge to jurisdiction offers to the plaintiff similar safeguards to those related to Rule 12(b)(6) and 56 motions.

In stark distinction is the factual 12(b)(1) motion which, not surprisingly, calls into question the essential facts underlying a claim of subject matter jurisdiction. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction[,] its very power to hear the case[,] ... the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen,* 549 F.2d at 891; *see Carpet Group Int'l v. Oriental Rug Importers Ass'n Inc.,* 227 F.3d 62, 69 (3d Cir.2000). Thus, the court may proceed in a way it cannot under Rules 12(b)(6) and 56; moreover, no presumptive truthfulness attaches to plaintiff's allegations of jurisdictional facts. *Robinson v. Dalton,* 107 F.3d 1018, 1021 (3d Cir.1997) (citing *Mortensen,* 549 F.2d at 891). When resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff. *Gould Electronics,* 220 F.3d at 176, 178. In general, when a Rule 12(b)(1) motion is supported by a sworn statement of facts, the court should treat the defendant's challenge as a factual attack on jurisdiction. *See International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines,* 673 F.2d 700, 711 (3d Cir.1982).

### B. Standing

Turning to the substance of the instant motion, defendants argue that plaintiff MSNJ lacks standing to pursue any of the claims in the Complaint. Under Article III, Section 2 of the United States Constitution, the exercise of judicial power depends upon the existence of a "Case" or "Controversy." U.S. Const. art. III, § 2; *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). This limitation on federal judicial authority is the source of the court's standing jurisprudence. Standing is comprised of both constitutional and prudential components.

The Third Circuit recently articulated the constitutional requirements of standing as follows:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 176 (3d Cir.2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The underlying purpose of the constitutional requisite of injury in fact is to " 'assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions.' " *Polaroid Corp. v. Disney*, 862 F.2d 987, 999 (3d Cir.1988) (quoting *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (internal quotation omitted)).

An association, like any other plaintiff, may establish standing in its own right if it can satisfy the constitutional standard set forth above. Alternatively, as may be the case when a plaintiff association cannot demonstrate injury to itself, it may pursue in a representative capacity the claims of its members if it can satisfy a three-prong test for associational standing. Under that test, an association must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 282 (3d Cir.2002).

Defendants argue that plaintiff MSNJ lacks standing in its own right to bring these claims because it has sustained no injury in fact, and that it may not invoke associational standing because none of its members stand to be injured by the alleged discriminatory practice of Mr. Herr. In support of this argument, they submit the sworn statement of the Board's executive director who states that there are no physicians in the category of physicians MSNJ claims to represent in the Complaint. Defendants argue that, in the absence of any physicians who have been harmed or are in imminent danger of being injured as a result of Mr. Herr's alleged discriminatory policy, MSNJ cannot satisfy the first element of the *Hunt* test for associational standing.

For its part, MSNJ does not claim that it has been injured directly by any action of defendants but rather asserts associational standing. There has been nothing offered in the way of proof, however, that rebuts the executive director's assertion that MSNJ's members are not imperiled *presently* by the actions alleged to have taken place by Mr. Herr. Instead, MSNJ argues that there is the potential for harm to befall "members and potential members.," (Plaintiffs' Br. at 4, 10).

In short, MSNJ's arguments do not satisfy the Article III's requirement of injury-in-fact. For one of its members to be injured that individual would have to: (1) suffer from a disability related to abuse or addiction to controlled substances, (b) submit to the PHP, (c) complete successfully the PHP, (d) apply to the Board for an

unrestricted license, (e) have the Board approve such licensure conditioned on Mr. Herr's approval of a private letter of agreement. In light of this attenuation, MSNJ's assertions of potential harm are remote and speculative. As a practical matter, MSNJ has submitted no proof whatever that disputes the fact that none of its members, excepting Doe, have been injured or are presently threatened with injury.[3] For these reasons, plaintiff MSNJ lacks associational standing under the *Hunt* standard and, therefore, its claims must be dismissed for lack of subject matter jurisdiction.[4]

### C. Ripeness

■ Similarly, the foregoing factual analysis tends to support dismissal of MSNJ's claims for lack of ripeness, a contention that defendants raise concurrently with their standing argument. Another Article III "Case" or "Controversy" limitation on federal court jurisdiction, the ripeness doctrine is centrally concerned with preventing "the courts' through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Artway v. Attorney General of the State of N.J.*, 81 F.3d 1235, 1246–47 (3d Cir.1996). The ripeness determination turns on the weighing of two factors: "(1)

the hardship to the parties of withholding court consideration; and (2) the fitness of the issues for judicial review." (*Id.*) In the instant matter, given that there has been no finalized agency decision pertaining to any of MSNJ's members [5]—only the organization's claim of hypothetical potential harm to their members—to permit MSNJ to proceed with the instant claims constitutes improper judicial intervention into a matter as yet unresolved in the first instance by the appropriate administrative agency. The Court is unpersuaded that either factor favors judicial intervention at this stage. Thus, ripeness serves as an alternative ground for dismissal of MSNJ's claims.

### D. Mootness

Next, defendants submit that, because the Board granted an unrestricted license to him in June 2001, plaintiff Doe's claim for declaratory and prospective injunctive relief under the ADA is moot and, therefore, should be dismissed for lack of subject matter jurisdiction. Apart from the requisite of standing, Article III's "Case" or "Controversy" requirement embodies an additional fundamental limitation that "restrict[s] the federal courts to the adjudication of 'actual, on going cases or controversies.'" *County of Morris v. Nation-*

---

3. On October 24, 2001, after briefing on this motion was completed, the Court received a letter from plaintiffs' counsel asserting additional facts in opposition to this motion. (Letter from Robert J. Conroy, Esquire to Judge John W. Bissell, Oct. 22, 2001). This letter was unsupported by any sworn statement and therefore does not constitute evidence. Moreover, counsel did not request an opportunity to file additional evidence, though he indicated a willingness to amend the pleadings to include further allegations. Putting aside the procedural impropriety of the submission, the letter in substance is insufficient to affect the Court's analysis above, which resolves this *factual*, rather than facial, challenge to subject matter jurisdiction.

4. Even if MSNJ satisfied the first prong of the *Hunt* analysis for associational standing, it nevertheless would be barred from pursuing claims for damages against defendants because, under the third prong, they typically necessitate an impermissibly high degree of involvement by individual members. *Pennsylvania Psychiatric Soc'y*, 280 F.3d 278, 282.

5. It is worth underscoring that the Court's evaluation of the issues pertaining to the justiciability of *MSNJ's* claims excludes consideration of the facts of Doe's treatment inasmuch as he is a party to this action who is analytically separate and distinct for purposes of standing and ripeness from MSNJ or any of its purported "potential members."

alist Movement, 273 F.3d 527, 533 (3d Cir.2001) (quoting Khodara Envtl., Inc. v. Beckman, 237 F.3d 186, 192–93 (3d Cir. 2001)). This requisite ensures that the courts are able to grant effective relief, rather than rendering advisory opinions. (Id.) Elaborating on this notion, the Third Circuit has stated that "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.' " (Id., quoting Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698–99 (3d Cir.1996)).

Here, plaintiff Doe concedes that his claim under the ADA is moot in a technical sense, but urges the Court to proceed to the merits anyway. First, Doe seeks the application of an exception to the mootness requirement for cases "capable of repetition, but evading review." S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911); DeFunis v. Odegaard, 416 U.S. 312, 318–19, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). Second, plaintiff urges that the mootness requirement is overcome by the fact that his claim has become moot only because of defendants' voluntary cessation of illegal conduct.

Though plaintiff advances what appear to be two distinct theories, a single argument undergirds his efforts to avoid dismissal for mootness, to wit: he may once again become aggrieved because defendant Herr may, "at any time, breach the confidentiality of his situation and release his private letter of agreement as a matter of public record." (Plaintiffs' Br. at 11). In this Court's judgment, this argument does not warrant circumvention of the mootness requirement on either legal ground advanced by Doe. First, it neither appreciates the narrowness of the "capable of repetition" exception, nor satisfies the applicable standard. Only exceptional cases merit taking the "capable of repetition, yet evading review" avenue around the mootness inquiry. Nationalist Movement, 273 F.3d at 534 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Specifically, the Third Circuit has stated that courts should apply this exception only when plaintiff demonstrates that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again." Abdul–Akbar v. Watson, 4 F.3d 195, 206 (3d Cir.1993). Here, plaintiff Doe's argument that Mr. Herr would take future action to harm him is groundless speculation, unsupported by reasoned argument and unaccompanied by some proof of Mr. Herr's continuing malice or ill will toward plaintiff. This is an insufficient basis for invoking the "capable of repetition" exception. (Id. at 207).

Second and similarly, plaintiff cannot avoid dismissal for mootness on a "voluntary cessation" ground. It is the law of the Third Circuit that when a defendant agrees to provide all the prospective injunctive relief sought by a plaintiff, his claim for that relief may be dismissed as moot. Johnson v. Horn, 150 F.3d 276, 287 (3d Cir.1998). Here, plaintiff seeks in Count I to enjoin defendants from holding back confidential letters of agreement, from publically disclosing their contents, and from interfering with the Board's duties. Yet, the undisputed facts of this record show that Doe has been granted an unrestricted license unaccompanied by any requirement for a private letter of agreement. This eventuality has mooted the above-described claims for injunctive relief because Dr. Doe no longer has any personal stake in the outcome of this matter on which justiciability turns. That there remains in Count I a claim for declaratory

relief does not save this claim from dismissal for mootness. In *Jersey Central Power & Light Co. v. New Jersey*, the Third Circuit determined that when a plaintiff's claim for equitable relief is moot, a concurrent request for declaratory relief did not prevent dismissal. 772 F.2d 35, 40–41 (3d Cir.1985) ("A declaratory judgment is available only so long as there is an actual controversy among the parties.") Accordingly, Count I of the Complaint will be dismissed for lack f subject matter jurisdiction as plaintiff Doe's claims therein are moot.[6]

## II. Defendants' Motion for Dismissal of Doe's § 1983 and Equal Protection Claims *is Granted for Failure to State a Claim.*

Defendants move against Doe's remaining claims set forth in Counts II and III of the Complaint. Both of these claims assert, either directly or through the vehicle of a cause of action under 42 U.S.C. § 1983, a deprivation of the Fourteenth Amendment's guarantee of the equal protection of the law. Defendants argue that, as a matter of law, the alleged conduct taken by Mr. Herr cannot constitute an equal protection violation.

### A. Standard for Rule 12(b)(6) Motion

This aspect of the defendants' motion is governed by Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). " 'Dismissal of a

plaintiff's claim under Rule 12(b)(6) occurs only if the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 604 (3d Cir. 1998) (quoting *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99). When considering a 12(b)(6) motion, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff. *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997).

### B. Equal Protection

The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. When addressing a claim of denial of equal protection, one must first consider the proper standard to be applied. The Third Circuit has stated generally that "economic and social legislation is subject to rational basis review, under which a law need only be rationally related to a legitimate state interest." *Tolchin v. Supreme Court of the State of N.J.*, 111 F.3d 1099, 1113–14 (3d Cir.1997) (internal quotations omitted). In contrast, state law that "establishes a classification that implicates fundamental rights or draws upon suspect distinctions such as race, religion or alienage" must meet strict scrutiny analysis. (*Id.*)

Classifications based on disability are subject to rational basis review because the disabled constitute neither a suspect nor a quasi-suspect class. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866, 879 (2001). Under rational basis scrutiny,

---

6. Based on the Court's conclusion that dismissal of plaintiffs' ADA claim is warranted on justiciability grounds, the Court need not address the secondary issue raised by the defendants: whether Title II of the ADA should be deemed a valid abrogation of the State's Eleventh Amendment immunity from suit.

a state's classification will survive as long as there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. *Lavia v. Pennsylvania, Dept. of Corrections,* 224 F.3d 190, 199 (3d Cir.2000). Discussing in detail this standard, the Court in *Garrett* stated that:

> where a group possesses distinguishing characteristics relevant to interests the State has the authority to implement, a State's decision to act on the basis of those differences does not give rise to a constitutional violation.... Moreover, the State need not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Garrett,* 148 L.Ed.2d at 879 (internal quotations omitted). So long as the State classification advances in a rational way the identified purpose, the challenged action survives the equal protection analysis. (*Id.*) The foregoing determination is a question of law. *Sammon v. New Jersey Board of Medical Examiners,* 66 F.3d 639, 645 (3d Cir.1995).

### Analysis

Plaintiff alleges that he was discriminated against on the basis of disability when Mr. Herr, the Director of the Division of Consumer Affairs, interceded into the evaluation by the Board of plaintiff's application for an unrestricted license. Doe asserts that Herr lacked the authority to prevent the Board from issuing without his approval a medical license to a physician based on the applicant's past substance abuse, and that no legitimate purpose was served by this action.

■ First, this Court disagrees with plaintiffs' assertion that defendant Herr lacked legal authority to review private letters of agreement concerning physicians who have undergone treatment for substance abuse. Indeed, the administrative framework established by the State legislature supports the opposite conclusion. The Board is established under the Division of Consumer Affairs, which is headed by Director Herr. N.J. Stat. Ann. § 52:17B–126 (West 2002). The Director, who reports directly to the Attorney General, is broadly empowered to investigate professional licensure matters that bear on public safety. N.J. Stat. Ann. § 45:1–18 (West 2002). Although the statutes directly authorize the Attorney General to take corrective actions when a Board decision threatens violation of the law or public safety, the delegation of aspects of these duties to the Director is entirely consistent with the statutory scheme. N.J. Stat. Ann. § 52:17B–5.8 (West 2002). These powers included the authority to "set aside, modify or amend, as may be necessary, any action or decision of a licensing agency, board or committee located within the Division of Consumer Affairs ...." N.J. Stat. Ann. § 45:1–17c (West 2002).

■ Second, the Court is unconvinced that the State, acting through its Director of Consumer Affairs, has no legitimate interest in ensuring that special precautions are taken to prevent the practice of medicine by individuals whose capacities are impaired by controlled substance abuse. However accurate plaintiff's assertion may be that his own behavior has been corrected through the PHP, it is legitimate for the State to be concerned that the physicians it licenses do not abuse controlled substances. *See Sammon,* 66 F.3d at 646; *Eatough v. Albano,* 673 F.2d 671, 676 (3d Cir.1982) ("It is long settled that states have a legitimate interest in regulating the practice of medicine.") Furthermore, it is entirely logical that past drug use by an individual suggests an increased risk of use in the future. Therefore, it rationally

"'might be thought'" that subjecting an applicant for a medical license who has abused drugs in the past to scrutiny different than that applied to those who have committed transgressions not involving chemical dependency advances the State's interest in protecting the public from the obvious dangers posed by intoxicated physicians. *Sammon,* 66 F.3d at 645 (quoting *Rogin v. Bensalem Twp.,* 616 F.2d 680, 689 (3d Cir.1980)); *Copeland v. Philadelphia Police Dept.,* 840 F.2d 1139, 1147–48 (3d Cir.1988) (rejecting equal protection challenge to city's disciplinary policy that treated police officers who used drugs more harshly than those who committed other offenses). Assuming the existence of a policy by which the issuance of private letters of agreement are conditioned on the Director's approval, when applied to applicants with a record of past substance abuse such scrutiny unquestionably advances the State's legitimate interest in increasing safety in the administration of medical services. In sum, the Court determines that the facts alleged do not state a claim of violation of the equal protection clause. Accordingly, both Counts II and III of the Complaint will be dismissed.

*1. Qualified Immunity*

█ Defendants argue, in the alternative, that Doe's § 1983 claim for damages against defendant Herr should be dismissed under the doctrine of qualified immunity. Recently, in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272, (2001), the Supreme Court stressed that courts considering assertions of qualified immunity must proceed with their analyses of the issues in a logical sequence. The threshold inquiry is: "Taken in the light most favorable to the party asserting injury, do the facts alleged show the officer's conduct violated a constitutional right?" (*Id.* at 2156). In the instant case, the Court answers this question in the negative. Based on the discussion in the pre-ceding section, it is apparent that the alleged policy of Mr. Herr does not rise to the level of a constitutional violation. Thus, defendant Herr is entitled to qualified immunity from Count II of the Complaint. (*Id.*) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

## CONCLUSION

For the foregoing reasons, all aspects of the Complaint are dismissed with prejudice, except for plaintiff MSNJ's claim under Count I which is dismissed without prejudice for lack of subject matter jurisdiction.

## ORDER

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 21st day of March 2002,

**ORDERED** that defendants' motion to dismiss is granted, and plaintiff's Complaint is hereby dismissed with prejudice, except for plaintiff Medical Society of New Jersey's claim under Count I which is dismissed without prejudice.